UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JERRY WAYNE MIRACLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 10-177-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Jerry Wayne Miracle ("Miracle" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 9, 11] Miracle argues that the Commissioner erred in finding that he is not disabled. In relevant part, he asserts that the Administrative Law Judge ("ALJ") assigned to conduct the administrative hearing did not give adequate reasons for rejecting the opinion of Dr. John M. Watts, his treating physician. Further, Miracle argues that the ALJ did not properly consider combined effects of his impairments or the "durational requirements" of the ability to perform substantial gainful activity. Instead, he contends that the ALJ merely considered his ability to find a job and perform it. Miracle seeks to have this matter remanded for an award of benefits or further factual findings on the issues raised in his summary judgment motion. However, through his motion

for summary judgment, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Miracle.

**I.**

On May 9, 2008, and February 17, 2009, Miracle filed applications for disability insurance benefits under Title II and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. He alleged a disability beginning April 30, 2008. [Tr., p. 11, 83-84] Miracle's claims were denied initially and upon reconsideration. Thereafter, an administrative hearing was held before ALJ Frank Letchworth on July 10, 2009. Miracle appeared at the hearing along with his attorney, Stacy Byrns Taulbee, and vocational expert ("VE") William Ellis. [Tr., p. 36] In a decision dated October 13, 2009, ALJ Letchworth found that Miracle retained the residual functional capacity to perform medium work, with certain identified restrictions. And based on the testimony of the VE, the ALJ concluded that there were jobs that exists in significant numbers in the national economy that Miracle was capable of performing. As a result of his findings and conclusions, the ALJ determined that Miracle was not entitled to disability insurance benefits or supplemental security income. [Tr., pp. 11-20]

Miracle appealed ALJ Letchworth's decision to the Social Security Administration's Appeals Council. The Appeals Council issued its decision on May 24, 2010, concluding that Miracle was not entitled to or eligible for a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, or supplemental security income payments under

section 1602 and 1614(a)(3)(A) of the Social Security Act. [Tr., pp. 1-5] Miracle then instituted this action challenging the final decision of the Social Security Administration.

## II.

Miracle was fifty-five years old at the time of the hearing before the ALJ. He has a fifth-grade education and work experience as a sales clerk at a flea market and a truck driver hauling recreational vehicles. Miracle's alleged disability stems from foot pain; headaches; pain in his chest, arms and neck; seizures; depression; panic attacks; and anxiety disorder. [Tr., pp. 40, 43-45, 129-30, 329, 33, 337] However, during the November 13, 2008, administrative hearing, the focus of Miracle's complaints related to panic attacks and seizures. [Tr., pp. 43, 45-49, 51-53] Despite these problems, his testified that his treating physician, Dr. John Watts, did not refer him to any mental health professionals.

> Q. Okay. Now has Dr. Watts ever referred you to any psychiatrists or psychologists for your panic problem?
>
> A. No.
>
> Q. So, is it fair that the only psychologist you've seen for the – besides Dr. – the only health professional that you've seen for the panic problem, besides seeing Dr. Watts, would be the Social Security doctor you went to ? Are there any others you might have gone to?
>
> A. No.
>
> Q. Never been to Comp Care?
>
> A. No.

[Tr., pp. 50] In addition, Miracle testified that the seizures he occasionally experienced did not result in any driving restrictions and did not prevent him from preforming work as a truck driver hauling recreational vehicles to the gulf coast.

After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Miracle suffered from anxiety disorder, depressive disorder, seizure disorder, and left foot abnormalities which were classified as severe impairments. [Tr., p. 13] Notwithstanding these impairments, the ALJ found that Miracle retained the residual functional capacity ("RFC") "to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c), subject to several limitations. More specifically, the ALJ found that the Claimant:

> can perform no climbing of ladders/ropes/scaffolds and no more than occasional climbing ramps and stairs, or balancing; he is precluded from work around unprotected heights and around hazardous or moving machinery; he can perform no more than simple instructions in no more than routine work settings that involve nor more than occasional and casual contact with other persons or nor more than occasional changes in the job setting or routines; he can perform no production rate or quota jobs.

[Tr., pp. 16]

In reaching this decision, the ALJ specifically addressed the nature and effect of the Claimant's impairments on his ability to perform work at the medium exertional level. Further, he specifically addressed all of Miracle's symptoms and complaints in light of the objective medical evidence and testimony presented for his consideration. Further, ALJ Letchworth specifically considered the Physical Capacities Form provided by Dr. Watts and found that the conclusions outlined on that form were not supported by other objective evidence in the record. With respect to this last item, the ALJ stated as follows:

> As for the opinion evidence, I accord little weight to the medical source statement of treating physician, Dr. John Watts, submitted on reconsideration (Exhibit 8F). Dr. Watts opined the claimant could perform no sitting/standing/walking, bending, squatting, crawling, or climbing, which is essentially limits the claimant to lying down all day. This limitation appears overstated and excessive when considered with Dr. Watts other assessments of the ability to lift 10 to 20 pounds occasionally, reach above shoulder level frequently, perform repetitive grasping and fine manipulations, but no repetitive pushing or pulling, no use of the left leg or both legs for repetitive operation of foot controls, and total preclusion from unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes and gases (Exhibit 8F). Furthermore, these limitations are inconsistent with the driving and flea market activities the claimant was doing prior to his application. Further, the claimant admitted at the hearing he stopped driving because of his anxiety and not due to physical limitations. Dr. Watts' assessment is also inconsistent with the claimant's ability to mow the grass for an hour, smoke cigarettes, fish, drive, watch television, and visit with family and friends (Exhibit 7E).

[Tr., pp. 17-18] The ALJ then explained his reasons for giving limited weight to Dr. Hoskins' assessment of the Claimant's condition:

> I also accord some, but limited weight to Dr. Hoskins' somewhat vague assessment of "some limitations for standing and walking on the basis of history" and would likely have "some" limitation for climbing stairs, with some ability to ambulate, stand, sit, handle gross manipulation or travel and nothing to exclude all light carrying, lifting, or "some" bending, squatting, crawling, climbing, and balancing (Exhibit 5F). The opinion the claimant's seizure disorder would likely have some effect on his employment is reserved to the Commissioner. I find the claimant's approximately monthly seizures that occur monthly when he is sleeping after being stressed or tired would not significantly impact his ability to perform work activity. I agree with Dr. Hoskins assessment the claimant may be a fall risk and have trouble climbing due to his seizure disorder and have accommodated this concern in the residual functional capacity assigned.

[Tr., p. 18]

Additionally, before summarizing the relevant evidence regarding Miracle symptoms, the ALJ properly identified the two-step process to be followed in his evaluation (*i.e.,* (i) whether

-5-

there is an underlying medically determinable physical or mental impairment that can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which can be reasonably expected to produce the claimant's pain or other symptoms; and (ii) the extent to which the intensity, persistence, and limiting effects of the claimant's symptoms limit the claimant's ability to do basis work activities). [Tr., p. 16] Under this framework, ALJ Letchworth addressed Miracle's assertions that pain in his head, chest, arms and feet, but noted that these complaint did not result in significant limitations, either individually, or in combination. And with respect to Miracle's claim that foot problems restricted his ability to walk or stand, as the ALJ noted, "[t]he fact that the claimant worked many years after he injured his foot without any specific complaints of foot limitations cast doubt on the credibility of his complaints." [Tr., p. 16]

The ALJ also found good reason to question Miracle's testimony regarding the nature, duration and extent of the Claimant's seizures. As ALJ Letchworth noted in his opinion:

> The claimant's testimony overall was weak, halting, vague, and lacking in authenticity as far as disability is concerned. When I asked about his earnings from pulling Rvs from Knoxville to the Gulf Coast, his responses often began with "well," "maybe," "uh", or "probability," which did little to enhance his credibility. Though he testified his worst impairment was his seizures, he testified his wife says they lasted only a "minute or two," and they occur once every 2 or 3 weeks. He does not know how long they last, and the last full-blown seizure was "about a year ago." The claimant testified he has not had any EEG for 7 to 8 years, which infers a stable seizure disorder. It strikes me as contradictory that he could haul trailers from Knoxville to the Gulf Coast and continue until the job expired, without apparent seizure problems or anxiety problems.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to

-6-

the extent they are inconsistent with the above residual functional capacity assessment.

[Tr., pp. 16-17] Thus, the ALJ explained his reasons for questioning Miracle's credibility regarding the intensity and limiting effects of his impairments. And these reasons are supported by evidence in the record.

## III.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. §

416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

While Miracle raises five issues in support of his motion for summary judgment, the first, second and fifth issues are essentially the same: that is, whether the ALJ gave proper weight to the opinion of Dr. Watts and whether he adequately explained the reasons for weight given to that opinion. In addition to this issue, Miracle asserts that the ALJ erred in failing to consider the combined effects of all of his impairments (Issue No. 3). Finally, he contends that the ALJ's decision should be reversed because he failed to consider the durational requirements of substantial gainful activity and not merely the ability to find a job and physically perform it (Issue No. 4).

### A. Opinion of Dr. John M. Watts, M.D.

A treating source's opinion as to the nature and severity of a claimant's impairments will be given controlling weight, provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers*, 486 F.3d at 242 (internal quotation omitted) (alteration in original). If the

ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for his decision. *Id.* These reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

As the Commissioner properly notes in his motion and supporting memorandum, ALJ Letchworth gave good reasons for giving little weight to Dr. Watts' opinions as outlined in his one-page Physical Capacities Evaluation ("PCE") dated September 2, 2008. [Tr., pp. 277] First, the PCE's focus was upon extreme physical limitations not supported by the objective medical evidence. Additionally, the limitations were also contrary to tasks which Dr. Watts found Miracle capable of performing. According to Dr. Watts, at the time of the evaluation, Miracle was completely unable to sit, stand, or walk. Further, the PCE indicates that, while Miracle could occasionally lift 20 pounds and frequently reach above shoulder level, the Claimant could not bend, squat, crawl, climb or use his left foot for repetitive actions such as operating foot controls.

Second, Dr. Watts opinion regarding Miracle's reasons for being unable to work were contrary to Miracle's testimony. According to Watts, Miracle's physical impairments prevented him from performing a number of activities. However, Miracle testified that he left work primarily because of anxiety and seizures. [Tr., pp. 43-44] Additionally, Miracle's daily activities (mowing grass, fishing, driving, visiting with friends, and prior work-related activities) are inconsistent with Dr. Watts' assessment.

Third, Dr. Watts' conservative medical treatment supports the ALJ's determination that Miracle's impairments were less severe than Watt's opinion suggests. Dr. Watts did not: (i) order x-rays of the Claimant's foot; (ii) order an EEG to assess the Claimant's seizures during the seven to eight-year period prior to expressing his opinion of disability; and (iii) never issued prescription medication for pain. Instead, the objective medical evidence supports the ALJ's decision to give weight to the consultative examiner, Dr. Robert C. Hoskins who concluded that "no musculoskeletal dysfunctions were identified that clearly exclude ambulation, standing, sitting, handling, gross manipulations, or traveling" or that would "clearly exclude all light carrying, light lifting, or some bending, squatting, crawling, climbing and balancing." [Tr., p. 217] Under the facts presented, the ALJ had solid reasons to reject the conclusions of Miracle's treating physician.[1]

### B. Combined Effect of Impairments

Miracle also argues that the ALJ did not consider the cumulative effect of his impairments. [Record No. 9] The ALJ is required to consider the combined effect of all the claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; 20 C.F.R. 416.923. The Sixth Circuit has held that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in

---

1 Evidence from the state agency medical consultant, Dr. Carlos X. Hernandez, also supports the ALJ's decision to give the opinion of the treating physician little weight. Dr. Hernandez concluded that Dr. Watts' opinion was inconsistent with the objective medical findings and other evidence. Unlike Dr. Watts, he determined that Miracle could sit, stand, and walk for six hours during an 8-hour day. [Tr., pp. 299, 304] Under the applicable regulations, the opinion of Dr. Hernandez is supported by objective medical evidence and is entitled to the weight given to it by the ALJ. 20 C.F.R. § 404.1527(f)(2); 20 C.F.R. § 416.927(f)(2). Substantial evidence also supports the ALJ's decision that Miracle does not have a mental impairment meeting the grid criteria. [Tr., pp. 14-16] However, the Claimant's mental impairment was properly considered by the ALJ in determining Miracle's RFC. [Tr., pp. 16-17]

combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

Here, ALJ Letchworth made a specific finding that Miracle "does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments" in the applicable regulations. [Tr., p. 14; Finding No. 4 (emphasis added)] He also made multiple references in his decision to Miracle's "impairments" (plural) and discussed each impairment in detail. [Tr., p. 11-20] Further, as noted by the Commissioner, the Claimant's counsel fails to explain how the combined effects of Miracle's impairments resulted in any limitation in excess of his RFC. Accordingly, the Court rejects this argument.

### C. Ability to Hold a Job for a Significant Period of Time

Finally, Miracle cites, *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999), for the proposition that "substantial gainful activity means more than merely the ability to find a job and physically perform same. It also requires the ability to hold the job for a significant period of time." [Record No. 9, p. 4] He complains that the ALJ erred in failing to consider this case. However, this Court has considered *Gatliff* on a number of occasions and repeatedly rejected any suggestion of a separate durational requirement. *See Wilson v. Astrue*, No. 10-89-DCR, 2010 U.S. Dist. LEXIS 109750 (E.D. Ky., Oct. 13, 2010); *Durham v. Astrue*, No. 09-202-DCR, 2010 U.S. Dist. LEXIS 15382, at *16-*17 (E.D. Ky., Feb. 22, 2010); *Johnson v. Astrue*, No. 08-298-JBC, 2009 U.S. Dist. LEXIS 71516, at *7-*8 (E.D. Ky. Aug. 10, 2009); *Wilder v. Astrue*, No.

08-108-KSF, 2009 U.S. Dist. LEXIS 20170, at *18 (E.D. Ky. Mar. 12, 2009); *Garland v. Astrue*, No. 07-181-DLB, 2008 U.S. Dist. LEXIS 45270, at *16 (E.D. Ky. June 10, 2008). Instead, the Court assumes that "[i]mplicit in the RFC assigned to Plaintiff by the ALJ is a finding that Plaintiff is capable of maintaining employment." *Garland*, 2008 U.S. Dist. LEXIS 45270, at *16. Thus, the RFC set out in ALJ Letchworth's decision reflected his determination of the type of work Miracle could perform for a significant period of time. *See id.*

**V.**

Although Miracle has established that he suffers from some medical impairments, he has not established that his symptoms are severe enough to warrant Supplemental Security Income or disability insurance benefits. The ALJ did not err in giving little or no weight to the opinion of Dr. Watts. Moreover, the ALJ gave sufficient consideration to the combined effect of Miracle's impairments. The Court also concludes that the ALJ fully considered Miracle's testimony but found him to be not credible for reasons that were properly explained in his decision. Viewing the record as a whole, substantial evidence supports the Commissioner's determination that Miracle is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1)    Plaintiff Jerry Wayne Miracle's Motion for Summary Judgment [Record No. 9] is **DENIED**;

(2)    Defendant Michael J. Astrue's Motion for Summary Judgment [Record No.11] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 15th day of December, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge